# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

JALEXIS O.,[1]

                    Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                    Defendant.

No. 6:17-cv-00172-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

Plaintiff Jalexis O. brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") decision denying his application for Disability Insurance Benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

On October 28, 2015, Plaintiff filed an application for Disability Insurance Benefits, alleging disability as of January 14, 2013. Tr. 173–74.[2] Plaintiff was denied initially upon application and upon reconsideration. Tr. 117–26. After Plaintiff requested a hearing, an Administrative Law Judge ("ALJ") determined that Plaintiff was not disabled and denied his claim. Tr. 29–30. Plaintiff now contends that the ALJ erred: (1) in failing to give clear and convincing reasons for rejecting his testimony; (2) in weighing the opinion of an examining physician and a therapist; and (3) in discounting Plaintiff's Veterans Administration ("VA") disability rating. Because the Commissioner erred in discounting Plaintiff's testimony, the examining physician's opinion and assessed limitations, and Plaintiff's VA disability rating, the

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of both the non-governmental party in the case and any immediate family members of that party.
[2] "Tr." refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

Commissioner's decision is REVERSED and the case REMANDED for an award of benefits.

## STANDARD OF REVIEW

A reviewing court shall affirm the decision of the Commissioner if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the district court must review the administrative record as a whole, weighing both the evidence that supports and detracts from the decision of the ALJ. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If the claimant satisfies his burden with respect to the first four steps, the burden then shifts to the Commissioner with regard to step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's Residual Functional Capacity ("RFC"), age, education, and work experience. *Id.*

In the present case, the ALJ found that Plaintiff was not disabled. She first determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2019. Tr. 20. Next, at step one of the sequential evaluation, the ALJ found that Plaintiff had engaged in four months of substantial gainful activity since the alleged onset date of January 14, 2013, but that Plaintiff also had a twelve-month period during which he did not engage in

substantial gainful activity. Tr. 20. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, status-post discectomy; bilateral patelloformal syndrome; left ankle tendinitis; obesity; and post-traumatic stress disorder ("PTSD"). Tr. 20. At step three, the ALJ found that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20.

Prior to step four, the ALJ determined that Plaintiff's RFC allowed him to perform light work with multiple exertional and nonexertional limitations. Tr. 23. Specifically, the ALJ found that Plaintiff was limited to lifting twenty pounds occasionally and ten pounds frequently; sitting and standing for "about six hours" and walking for "about six hours" in an eight-hour workday with normal breaks; only occasional climbing of ramps or stairs; only occasional balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; no contact with the general public; and only occasional contact with coworkers and supervisors. Tr. 23. In addition, the ALJ found that Plaintiff must be allowed to alternate between sitting and standing positions throughout the workday; use a cane for ambulation; and avoid even moderate exposure to workplace hazards, including hazardous machinery and unprotected heights. Tr. 23.

In determining Plaintiff's RFC, the ALJ assigned various weights to the opinions of five medical sources who treated, examined, or reviewed the medical records of Plaintiff. *See* Tr. 26–27. Additionally, the ALJ assigned some weight to a nonmedical opinion from Plaintiff's counselor, as well as very little weight to Plaintiff's VA disability rating. Tr. 26–27. Finally, the ALJ considered supportive statements and observations from Plaintiff's wife. Tr. 27.

At step four, the ALJ considered whether Plaintiff could perform past relevant work, either as generally performed in the national economy or as it was actually performed previously

by Plaintiff. Tr. 28. The ALJ found that Plaintiff's past relevant work included his jobs as a solar panel installer, lube technician, and auto services manager. Tr. 28. Relying on a Vocational Expert ("VE"), the ALJ found that, based on his RFC, Plaintiff could not perform any of his past relevant work, either generally in the national economy or as actually performed. Tr. 28.

At step five, the ALJ considered Plaintiff's RFC, age, education, and work experience to determine if a work adjustment could be made. Tr. 28–29. In consultation with the VE, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including mail sorter, electronics worker, and price marker. Tr. 29. As a result, the ALJ concluded that Plaintiff was "not disabled" for purposes of the Social Security Act and therefore did not qualify for benefits. Tr. 29.

Plaintiff challenges the ALJ's non-disability determination on three grounds. First, he argues that the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discrediting his symptom testimony. Pl.'s Br. 17. Second, Plaintiff argues that the ALJ improperly discounted the opinions of his examining physician and counselor. Pl.'s Br. 4, 10. Finally, Plaintiff argues that the ALJ improperly discounted his permanent 100% VA disability rating. Pl.'s Br. 11. The Court addresses each objection in turn.

## I. Subjective Symptom Testimony.

Plaintiff first challenges the ALJ's decision to not credit his physical symptom testimony. Pl.'s Br. 17. The ALJ found Plaintiff's physical symptom testimony to not be credible for three reasons: (1) inconsistencies with the objective medical evidence, including evidence in the medical record that Plaintiff exhibited only a "mildly limited" range of motion, intact strength, reflexes, and sensation, and the ability to walk without a cane; (2) a generally conservative course of treatment; and (3) inconsistencies with reported activities of daily living, namely

Plaintiff's ability to perform adequate selfcare, complete household chores, go for daily walks, and ride a motorcycle with his VA support group. Tr. 26.

Plaintiff argues that the ALJ erred by rejecting his physical symptom testimony without providing clear and convincing reasons supported by substantial evidence in the record.[3] Pl.'s Br. 17–21. In particular, he contends that the ALJ failed to identify the specific symptom testimony which she found non-credible, support her conclusions with sufficiently specific citations to the medical record, or otherwise rely upon substantial evidence in rejecting Plaintiff's alleged symptoms. Pl's Br. 17–21. The Commissioner responds that the ALJ clearly identified several convincing reasons for discounting Plaintiff's testimony, including inconsistencies with the medical and non-medical evidence in the record, Plaintiff's conservative course of treatment, and inconsistencies with Plaintiff's activities of daily living. Def.'s Br. 7–10. These reasons, the Commissioner maintains, were all supported by substantial evidence. Def.'s Br. 7–10

An ALJ may only reject testimony regarding the severity of a claimant's symptoms if she offers "clear and convincing reasons" supported by "substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1993)). In assessing credibility, the ALJ may consider a wide range of factors, including "ordinary techniques of credibility evaluation," as well as the claimant's daily activities, objective medical evidence, treatment history, and inconsistencies in testimony. *Molina v. Astrue*, 674 F.3d 1104, 1163 (9th Cir. 2012) (citation omitted). When reaching an ultimate conclusion on the credibility of specific testimony, the ALJ must be "sufficiently

---

[3] Plaintiff does not object to the ALJ's rejection of his psychological symptom testimony and the Court assumes without deciding that the ALJ did not err in rejecting that testimony.

specific to allow a reviewing court to conclude that the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.3d 586, 592 (9th Cir. 2009) (original emphasis and ellipses omitted).

**A. Inconsistencies with the Medical Record.**

The ALJ first rejected Plaintiff's testimony regarding his physical impairments based on inconsistencies with the objective medical evidence and other portions of the treatment record. Specifically, the ALJ discounted Plaintiff's symptom testimony with respect to his back, knee, and ankle impairments—namely the number of days those ailments would prevent him from attending work each month and whether the ailments would require him to recline during the workday—based on his "range of motion" being only "mildly limited," his "strength, sensation, and reflexes" being intact, and his reporting of only "occasional radicular symptoms." Tr. 26. She also emphasized that, with respect to his knee pain specifically, Plaintiff reported "significant improvement" and "no longer required the use of a cane." Tr. 26.

The ALJ's reliance on the medical record did not, under the circumstances, constitute a clear and convincing reason to reject Plaintiff's symptom testimony. First, it is impossible to identify which ailments and symptoms were discounted by the ALJ based on which portions of the medical record. Despite Plaintiff's three distinct ailments affecting his knee, back, and ankle, the ALJ summarily discounted his symptom testimony with a general, non-appendage-specific reference to Plaintiff's "range of motion . . . , strength, sensation, and reflexes." Tr. 26. It is unclear to which ailment and corresponding symptom each reason applies and, more importantly, none pertain to the frequency or intensity of pain when sitting, standing, or walking. Further, to the extent the record might contain evidence to support the proposition that Plaintiff's knee,

back, and ankle all had substantially intact ranges of motion, strength, sensation, and reflexes, the ALJ's supporting citation refers generally to over 150 pages of treatment records. Tr. 26 (citing Ex. 1F (95 pages); Ex. 4F (56 pages), Ex. 6F (7 pages)). As the Ninth Circuit has made clear, an "ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." [4] *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). Here, the ALJ's rejection of Plaintiff's multifaceted symptom testimony lacks the requisite specificity required for this Court to evaluate the evidence relied upon and fails to connect specific symptom testimony with specific, relevant inconsistencies in the medical record.

Second, even where the ALJ did identify specific symptom testimony contradicted by specific portions of the medical record, her reasoning is not supported by substantial evidence. The ALJ reasoned that Plaintiff's claimed limitations from his back and knee ailments were not credible because he "reported only occasional radicular symptoms, . . . reported significant improvement in his knees[,] and no longer required use of a cane." Tr. 26. While these statements, unlike those described above, were supported by citations to specific portions of the medical record, *see* tr. 496, 547, 587, the ALJ both cherry-picked isolated instances of improved physical symptoms which were inconsistent with the record as a whole and relied upon medical

---

[4] This principle was further fleshed out in *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015):

> Our review of the ALJ's written decision reveals that she did not specifically identify . . . inconsistencies [between the plaintiff's testimony and the medical record]; she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination. This is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully . . . . Although the inconsistencies identified by the district court could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make, and ours only to review. . . . Indeed, 'our decisions make clear that we may not take a general finding—an unspecified conflict between Claimant's testimony and her reports to doctors—and comb the administrative record to find specific conflicts.' Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination.

*Brown-Hunter*, 806 F.3d at 494 (internal citations and original alterations omitted).

evidence with little bearing on the issue of pain and discomfort. "Cycles of improvement and debilitating symptoms are a common occurrence. It is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("It is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

Specifically, the ALJ relied on a single treatment note to reject Plaintiff's symptom testimony regarding his knee-related limitations and two treatment notes to reject Plaintiff's symptom testimony regarding his back-related limitations. With respect to the first treatment note, Jeff McDowell, M.A., L.P.C., recorded, during a cognitive therapy session on February 9, 2016, that Plaintiff "was not using his cane today." Tr. 496. Although inconsistencies between a plaintiff's testimony and the treatment record form a valid reason for rejecting testimony, the single instance of improvement cited by the ALJ was not, when viewed in the context of the entire medical record, substantial evidence of lesser functional limitations. Plaintiff received a corticoid steroid injection four days prior to his February 9 appointment with Mr. McDowell. Tr. 557. As Plaintiff stated on several occasions, these injections "really work initially, but start to wear off after a couple weeks." Tr. 557; *see also* tr. 404, 450, 547, 549, 553, 559. It is entirely consistent with Plaintiff's positive but short-lived response to the injections that he would appear at a cognitive therapy session without his cane. To infer otherwise as a basis for wholesale rejecting symptom testimony related to Plaintiff's knee pain is simply unreasonable.

Moreover, Plaintiff testified that he experienced "good days and bad days." Tr. 63-64; *see also* tr. 558, 566-67. Consistent with that testimony, the record reflects waxing and waning symptoms throughout Plaintiff's course of treatment, including after the single appointment cited

by the ALJ. Just two weeks after the February 9 appointment, Plaintiff reported that he "continued to struggle with pain management surrounding his knees" and "fear[ed] the possibility of [knee] surgery." Tr. 494. He also continued to attend physical and occupational therapy sessions based in part on recurrent knee problems, *see* tr. 563-67, 581-90, continued to use a cane as needed, *see* tr. 519, 547, 553, 566-67, 580, 594, and sought additional corticoid steroid injections following the appointment, *see, e.g.*, tr. 481. Indeed, despite relying upon Plaintiff's momentary lack of cane usage as a ground to discredit much of Plaintiff's knee-related symptom testimony, the ALJ concluded that Plaintiff *does* require a cane to ambulate. Tr. 23. The ALJ's reasoning with respect to Plaintiff's knee-related testimony is therefore contradicted by her own RFC formulation and otherwise unsupported by substantial evidence in the record.

With respect to the two treatment notes concerning Plaintiff's back-related symptom testimony, one was recorded during a June 14, 2016 appointment with primary care physician Norbert Gerondale, M.D., tr. 547, and the other during a March 15, 2016 physical therapy session with Karen Boswell, P.T., tr. 587. The portion of Dr. Gerondale's note cited by the ALJ states that Plaintiff had only "occasional radicular symptoms down [his] right leg." Tr. 547. This is not inconsistent with Plaintiff's other statements or treatment records which, as already noted, reflect cycles of improvement and regression. More to the point, however, Plaintiff's radicular pain, which registered down his leg, was only one symptom of his herniated disk, *see, e.g.*, tr. 53, 67, 431, 521, and the remainder of Dr. Gerondale's note reflected that Plaintiff continued to suffer "chronic . . . low back pain" for which he required ongoing pharmacological "pain management," tr. 547. Indeed, Plaintiff rated his low back pain, as opposed to radicular pain, at an 8 out of 10 during the June 14 visit with Dr. Gerondale. Tr. 549. Similarly, Ms. Boswell's note reflects that, on March 15, 2016, Plaintiff had "improved lumbar flexion." Tr. 587. As noted

above, Plaintiff's ability to momentarily reach down toward his toes is not a substantial basis on which to reject his testimony regarding the intensity and frequency of waxing and waning pain in his low back. On the day, Plaintiff still rated his pain at a 5 out of 10 and reported pain at an 8 out of 10 within the prior two weeks. Tr. 587. In addition, despite some improvement in his "lumbar flexion," Plaintiff's "lumbar spine extension" had actually regressed by over twenty percent, *id.*, and his low back pain worsened over the following months, *see, e.g.*, tr. 578, 583.

In sum, with respect to the ALJ's reliance upon the medical record as a basis for rejecting Plaintiff's physical symptom testimony, the ALJ erred by (1) generally failing to identify the specific testimony which she found to be less than credible, (2) supporting much of her reasoning without reference to specific portions of the medical record, and (3) cherry-picking isolated instances of improved symptoms which were not inconsistent with Plaintiff's impairments.

**B. Conservative Course of Treatment.**

The ALJ next discredited Plaintiff's testimony regarding his physical impairments based on Plaintiff's "conservative" course of treatment. Tr. 26. According to the ALJ, Plaintiff "largely" relied upon "over-the-counter and prescription medication," and had "not generally received the type of medical treatment one would expect for totally disabled individual." Tr. 26.

This was not, under the circumstances, a valid reason for rejecting Plaintiff's symptom testimony. Generally, evidence of a conservative course of treatment is "sufficient to discount a claimant's testimony regarding [the] severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that an ALJ may consider a claimant's "unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment" in weighing claimant credibility). Nevertheless, "although a conservative course of treatment can undermine allegations of

debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citation omitted). The ALJ's reasoning must also, as always, be supported by substantial evidence.

Here, the ALJ ignored the varied and aggressive treatments pursued by Plaintiff and disregarded the valid reasons offered by Plaintiff for opting not to pursue alternative treatments. First, the ALJ ignored active treatments pursued by Plaintiff to address his back- and knee-related symptoms. With respect to his knees, Plaintiff was not only prescribed the conventional painkillers noted by the ALJ, tr. 26, 264, but he also received regular prescription steroid injections, *see, e.g.*, tr. 450, 547, 557, 559, often walked with the assistance of a cane, see 519, 547, 553, 566-67, 580, 594, and consistently attended physical therapy sessions, *see, e.g.*, tr. 563-67, 581-90. With respect to his back, Plaintiff underwent a discectomy in 2012, tr. 547, and received spinal steroid injections in both 2014 and 2015, tr. 521, 523. Plaintiff also testified in August 2016 that he was scheduled to receive yet another spinal injection that month. Tr. 69. Although the ALJ acknowledged Plaintiff's use of prescription medications, she ignored the other treatments he received, including invasive steroid injections and surgical intervention, the totality of which cannot reasonably be described as "conservative." *Cf. Garrison*, 759 F.3d at n.20 (expressing doubt that epidural injections constitute a "conservative medical treatment").

Second, Plaintiff offered valid reasons for not seeking further treatment. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Orn*, 495 F.3d at 638) (holding that conservative treatment is "not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment"). Although the ALJ never identified which additional treatments Plaintiff could have pursued, the record reflects

that Plaintiff was advised to undergo an additional back surgery, *see* tr. 72, and declined an epidural steroid injection in June 2016, tr. 571. Plaintiff, however, consistently reported that the highly invasive spinal injections provided little relief, *see, e.g.*, tr. 431, 556, and he was, in fact, scheduled to receive another one shortly after his hearing in August 2016. It would make little sense for Plaintiff to regularly undergo an invasive procedure with little benefit and, if anything, the fact that he was scheduled to receive another injection suggests that he was desperate to find relief and willing to retry previously unsuccessful treatments. Plaintiff also explained that he wished to undergo the additional back surgery, but that he was "pushing it off" until he could afford a single-story home (i.e., one without stairs) where he could more easily recover and avoid further injury. Tr. 72. If anything, Plaintiff's stated intent to undergo a second invasive surgery gives rise to the inference that he continued to experience significant back pain. *See Osborn v. Colvin*, 104 F.Supp.3d 1104, 1110 (D. Or. 2015).

In sum, because the ALJ ignored the varied and aggressive treatments pursued by Plaintiff, failed to acknowledge Plaintiff's valid reasons for delaying his pursuit of other treatment options, and provided no alternative treatments which Plaintiff should have pursued, the ALJ erred to the extent she discounted Plaintiff's testimony based on his "generally conservative" course of treatment.

### C. Inconsistencies with Activities of Daily Living.

Finally, the ALJ discounted Plaintiff's testimony because Plaintiff's "alleged limitations are not fully supported by his reported activities in the medical record." Tr. 26. Specifically, she found that Plaintiff's ability to perform adequate selfcare, do household chores, go to the store, stretch, go for daily walks, and ride his motorcycle indicated a "higher level of function" than Plaintiff claimed. Tr. 26.

An ALJ may use a claimant's daily activities to reject his subjective symptom testimony on either of two grounds: (1) if the reported activities contradict the claimant's other testimony; or (2) if the activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "The mere fact that a [claimant] has carried on certain daily activities, however, "does not in any way detract from [their] credibility as to [their] overall disability." *Id.* Further, "many home activities are not easily transferable to what may be the more grueling environment of the workplace." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Here, Plaintiff's activities of daily living were not inconsistent with his claimed need to recline during the workday or his claimed inability to leave bed on certain days. These limitations relate to the length of time over which Plaintiff could sit, stand, and walk without needing to lay down, as well as the frequency of Plaintiff's totally disabling pain. The ability to engage in certain activities for short periods of time or to conduct an activity on a specific day would not speak to these limitations (i.e., stamina or frequency of symptoms). Nevertheless, it was exclusively upon these abilities which the ALJ relied in rejecting Plaintiff's testimony as inconsistent with his activities of daily living. Plaintiff testified that his wife mainly completed household chores, with Plaintiff "help[ing] out a little bit." Tr. 69. Plaintiff also reported that he could wash dishes for "five minutes at a time," but could not cook, vacuum, mop, or do laundry and that getting dressed and putting on shoes required assistance from his spouse. Tr. 68.. Tr. 450. The record further reflects that Plaintiff rarely went grocery shopping and relied on the shopping cart for support when he did. Tr. 450. Plaintiff also required a shower stool and a raised toilet with handlebars to avoid falls and injuries. Tr. 450. Although Plaintiff reported stretching and taking walks when physically able, the walks were short and Plaintiff had difficulty, often requiring breaks. Tr. 345, 450. In sum, Plaintiff's ability to perform some selfcare activities,

complete certain chores, and engage in limited physical activity is consistent with his testimony and not substantial evidence of a higher level of functioning than that alleged.

The same is true of Plaintiff's intermittent motorcycle riding. Plaintiff testified that he rode his motorcycle up to three times per week as therapy for PTSD and out of financial necessity to save fuel. Tr. 64. He explained that his motorcycle had a pendulum in it which required him only to balance and that he was physically unable to pick up the motorcycle if it fell over. Tr. 62-63. Plaintiff further testified that he had "bad day[s]" when he was unable to ride his motorcycle. Tr. 67. The ALJ never explained how Plaintiff's motorcycle riding was inconsistent with his symptom testimony but, again, nothing about the activity as described reasonably relates to the *length* of time over which Plaintiff could sit, stand, and walk or the frequency with which Plaintiff was bedridden. At most, Plaintiff's riding demonstrates his ability, when feeling well, to sit for limited periods of time and balance with mechanical assistance. It was not, however, a reasonable basis for finding that Plaintiff was able to avoid reclining for 8-hour periods or that Plaintiff was incapacitated for an average of less than one workday per month. The ALJ's reasoning was, therefore, not supported by substantial evidence and she erred in rejecting Plaintiff's testimony based on his activities of daily living.

II.  Weight Assigned to Examining Physician.

Plaintiff next challenges the weight assigned to the medical source opinion of Dr. Engelhardt, an examining physician.[5] Pl.'s Br. 4-9. Dr. Engelhardt examined Plaintiff one time on January 8, 2016. Dr. Engelhardt collected objective measurements and diagnosed Plaintiff with chronic low back pain and chronic knee pain. Tr. 454. In her medical source statement, Dr.

---

[5] Plaintiff also challenges the weight assigned to Mr. McDowell's nonmedical source opinion. Pl.'s's Br. 13-17. Since the Court is remanding the case for payment of benefits based on Plaintiff's physical impairments, and Mr. McDowell's opinion relates to Plaintiff's mental limitations, it need not reach the issue. The Court therefore assumes without deciding that the ALJ properly discounted the opinion of Mr. McDowell.

Engelhardt opined that Plaintiff could stand and walk less than two hours and sit only up to two hours in an eight-hour workday. Tr. 454. She also opined that Plaintiff could not lift or carry ten or more pounds. Tr. 454. The ALJ gave Dr. Engelhardt's opinion very little weight, reasoning that it was inconsistent with Plaintiff's reported motorcycling activities and the totality of the medical evidence of record. Tr. 27. The ALJ also discounted Dr. Engelhardt's opinions because Plaintiff admitted that he returned to substantial gainful activity until told to quit by his physician. Tr. 27. The ALJ then gave more weight to the opinions of the reviewing physicians, Dr. Davenport and Dr. Moner, *see* tr. 25–26, both of whom concluded that Plaintiff could sit and stand for six hours and walk for six hours per eight-hour workday. Tr. 91, 107–08.

Generally, the opinions of examining physicians are favored over those of reviewing physicians. *See* 20 C.F.R. § 404.1527(c); *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) ("[T]he opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician."). However, the ALJ is responsible for resolving conflicts and ambiguities in the medical testimony. *Tommasetti*, 533 F.3d at 1041. Where the opinions of an examining and a reviewing physician conflict, the ALJ can reject the examining physician's opinion only with "specific and legitimate reasons supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014).

Plaintiff argues that the ALJ did not provide valid reasons to reject Dr. Engelhardt's opinion. Pl.'s Br. 4. I agree. First, the ALJ asserted that Plaintiff's motorcycle riding was

inconsistent with Dr. Engelhardt's opinion that Plaintiff could sit, stand, and walk for a combined time of less than two hours per eight-hour workday.[6] Tr. 27. While this reasoning is specific, it is unsupported by substantial evidence in the record for the same reasons outlined in Part I.C. As discussed above, Plaintiff explained that his motorcycle had a pendulum in it which required him only to balance and that he was physically unable to pick up the motorcycle if it fell over. Tr. 62-63. Plaintiff further testified that he had "bad day[s]" when he was unable to ride his motorcycle. Tr. 67. Again, nothing about the activity as described reasonably relates to the *length* of time over which Plaintiff could sit, stand, and walk over an eight-hour period. At most, Plaintiff's riding demonstrates his ability, when feeling well, to sit for limited periods of time and balance with mechanical assistance. It was not, however, a reasonable basis for finding that Plaintiff was able to avoid reclining for an 8-hour period. Although the Commissioner cites Plaintiff's stated intention of going on "long rides" in the future, Def.'s Br. 10 (citing tr. 484), there is no evidence of how long those rides would have been, that Plaintiff ever took such rides, or that the ALJ based her reasoning on that statement.

Second, the ALJ asserted that Plaintiff's return to substantial gainful activity further undermined Dr. Engelhardt's opinion. Tr. 27. Plaintiff admitted to performing civilian work as a fiber optics technician shortly after his discharge from the army and after the alleged onset date of his disability. Tr. 57–58. Although the technician job required heavy exertion, tr. 73, Plaintiff testified that he made that work attempt out of financial necessity because he "had sold everything in order to pay rent" and was "down to nothing" while awaiting VA benefits. Tr. 57.

---

[6] The ALJ also found that Plaintiff's motorcycle riding was inconsistent with Dr. Engelhardt's assessed limitation on lifting more than ten pounds. Tr. 27. Since the VE testified that the need to recline at any point during an eight-hour workday would preclude a claimant from finding work, tr. 79-80, the Court need not address whether it was reasonable for the ALJ to find that Plaintiff's motorcycle riding was inconsistent with Dr. Engelhardt's assessed limitation on lifting.

Plaintiff's work attempt only lasted from September 2013 through December 2013, when a doctor instructed Plaintiff to quit working after taking an x-ray of his back. Tr. 57.

The Social Security Administration generally considers work that a claimant is "forced to stop or reduce below substantial gainful activity level after a short time" because of an impairment to be an "unsuccessful work attempt." 20 C.F.R. § 404.1574(a)(1). In addition to being forced to stop working, the regulations also require that the claimant have been out of work for at least thirty days before the work attempt and have been forced to stop working due to his impairments. *Id.* at (c)(1)-(3). Here, eight months passed between Plaintiff's work in the Army (which ended due to discharge in January 2013) and the start of Plaintiff's civilian work attempt. He was, moreover, forced to stop working because of his impairments, which continued to worsen because of the work attempt, and the Social Security Administration recommended that the attempt be classified as unsuccessful. Tr. 217. Plaintiff's work as a fiber optics technician must be regarded as an unsuccessful work attempt.

An ALJ may not rely upon an unsuccessful work attempt to find a claimant not credible. *See Cass v. Astrue*, No. 09-6030-PK, 2010 WL 1286440, at *3 (D. Or. 2010) (affirming the ALJ's finding that the claimant was not credible but noting that it was inappropriate for the ALJ to use the claimant's unsuccessful work attempt to undermine the claimant's credibility). This is especially so where a claimant attempts to work "only because of economic necessity." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007). In fact, an attempt to return to substantial gainful activity, rendered unsuccessful solely by the claimant's symptoms and limitations, strengthens a claimant's credibility. *See id.* (suggesting that evidence that a claimant tried to work and failed actually supported his allegations of disabling pain."). As an ALJ may not use an unsuccessful work attempt to discredit a claimant's testimony, the ALJ likewise

cannot use an unsuccessful work attempt to discredit the opinion of an examining physician who assesses limitations that would not allow a successful return to work. Thus, it was inappropriate for the ALJ to use Plaintiff's unsuccessful work attempt to discredit Dr. Engelhardt's testimony.

Finally, the ALJ asserted that Dr. Engelhardt's opinion was inconsistent "with the totality of the medical record." Tr. 27. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725)). As discussed in Part I.A, the ALJ's indiscriminate citation to entire sections of the medical record fails to connect specific assessed limitations with specific, relevant inconsistencies in the record and offers the Court little upon which to determine whether the ALJ arbitrarily reached her conclusion. To the extent the ALJ cited to specific portions of the medical record in other areas of her opinion, the Court already concluded that those citations were selective and not inconsistent with Plaintiff's waxing and waning symptoms. In particular, the ALJ cherry-picked isolated instances of improved physical symptoms which contradicted the record as a whole and relied upon medical evidence with little bearing on the issues of pain and discomfort generally, stamina with respect to sitting, standing, and walking over the course of an eight-hour workday, and the number of days on which Plaintiff would be incapacitated. The ALJ therefore erred in assigning little weight to the opinion of Dr. Engelhardt.

III.    VA Disability Rating.

Finally, Plaintiff argues that the ALJ failed to provide "persuasive, specific, valid reasons" for discounting his VA disability rating. Pl.'s Br. 11. The VA determined that Plaintiff became 100% unemployable due to 90% service-connected disabling impairments effective

January 15, 2013. Tr. 462 ("Entitlement to individual unemployability[7] is continued . . . We assigned a permanent 100% disability evaluation for your service connected disability/disabilities effective January 15, 2013."). The VA found Plaintiff "totally and permanently disabled due solely to [his] service-connected disabilities." Tr. 282. The ALJ afforded that determination little weight. Tr. 27.

An ALJ "must ordinarily give great weight to a VA determination of disability." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).[8] Although the Social Security disability criteria are not necessarily satisfied by VA disability determinations, an ALJ may discount a VA disability rating only if she provides "persuasive, specific, valid reasons for doing so that are supported by the record." *Id*. Here, the ALJ has failed to meet this standard.

First, the ALJ noted the differences between the criteria that the two agencies use to evaluate disability, Tr. 27. This was error: "Insofar as the ALJ distinguished the VA's disability rating on the general ground that VA and SSA disability inquiries are different, her analysis fell afoul of *McCartey*." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009) (citing *McCartey*, 298 F.3d at 1076); *see also Berry v. Astrue*, 622 F.3d 1228, 1236 (9th Cir. 2010) (holding that distinguishing the SSA and VA disability criteria is not a persuasive, specific, valid reason for discounting a VA determination).

Next, the ALJ reasoned that the "VA disability rating does not support a conclusion that the claimant is unable to perform any light work in light of the objective testing and treatment

---

[7] "Individual Unemployability is a part of VA's disability compensation program that allows VA to pay certain Veterans disability compensation at the 100% rate, even though VA has not rated their service-connected disabilities at the total level." U.S. Department of Veterans Affairs, *Compensation*, http://www.benefits.va.gov/compensation/claims-specialindividual_unemployability.asp (last visited Sept. 17, 2018).

[8] *McCartey*'s holding was based on a prior version of 20 C.F.R. § 404.1504. A new version has since been enacted. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5,844, 5,864 (Jan. 18, 2017) (effective for claims filed on or after March 27, 2017). But the prior version, and its accompanying binding precedent, applies to this case.

history." Tr. 28. The objective testing rationale is neither specific nor persuasive. Once again, the ALJ did not indicate what objective testing was inconsistent with the VA disability rating or explain how the objective testing was inconsistent with the VA rating. As discussed above, the objective medical evidence relied upon by the ALJ to reject Plaintiff's symptom testimony was not inconsistent with his symptom testimony and the ALJ failed to offer substantial evidence in support of her finding that Plaintiff adopted a conservative course of treatment. These were not "persuasive, specific, valid" reasons to discount the VA's disability rating and the ALJ therefore erred in assigning little weight to the rating.

IV.     Remedy for Deficiencies of ALJ's Findings.

As discussed above, the ALJ's reasoning and ultimate disability determination contained harmful legal error and was not supported by substantial evidence in the record. Plaintiff requests remand for immediate payment of benefits, or in the alternative, remand for further proceedings. Pl.'s Br. 22. This Court has "discretion to remand a case either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) (citing *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989)). Generally, the "decision of whether to remand for further proceedings turns upon the likely utility of such proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000) (citing *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). To remand for an award of benefits, three elements must be satisfied:

> (1) The record has been fully developed and further administrative proceedings would serve no useful purpose;
>
> (2) The ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and
>
> (3) If the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020.

Here, when the improperly discounted evidence is credited as true, the ALJ would be required to find that the Plaintiff is disabled and award benefits. As a threshold matter, the record is fully developed and, at least with respect to Plaintiff's claimed limitations on sitting, standing, and walking over the course of an eight-hour workday, there is no medical evidence in the record which casts into serious doubt Plaintiff's testimony or the opinion of Dr. Engelhardt. The VE testified that Plaintiff would be unable find work if he were required to recline at any point during the workday, miss work more than one day per month, or be unproductive ten percent or more of the time. Tr. 77–80. If credited as true, Plaintiff's testimony regarding his inability to remain sitting, standing, or walking for an entire eight-hour workday, Dr. Engelhardt's assessed two-hour limit on siting, standing, and walking, and the 100% VA disability determination would necessarily result in a finding that Plaintiff cannot perform even sedentary work under the criteria outlined by the VE. Since further proceedings would therefore be of no use, the case is more appropriately remanded for an award of benefits.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and the case REMANDED for an award of benefits pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 10th day of October, 2018.

s/Michael J. McShane
Michael J. McShane
United States District Judge